UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

VILINDA YORK,

      Plaintiff,

                                       Case No. 5:12-cv-00630-22PRL

v.

NEW ENGLAND COMPOUNDING
PHARMACY, INC., a foreign corporation,
d/b/a NEW ENGLAND COMPOUNDING
CENTER (NECC),

      Defendant.

_____/

**DEFENDANT NEW ENGLAND COMPOUNDING PHARMACY, INC.
D/B/A NEW ENGLAND COMPOUNDING CENTER'S RESPONSE
TO PLAINTIFF'S MOTION FOR REMAND**

Defendant New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC" or "Defendant") respectfully submits this memorandum in response to Plaintiff's Motion for Remand and Accompanying Memorandum of Law [DE 9].

**INTRODUCTION**

Plaintiff in this action is, and was at all relevant times, upon information and belief, a Florida citizen who argues that remand is required because she has purportedly limited her pleadings to state law causes of action and based on an alleged lack of diversity. NECC submits that the instant matter is subject to this Court's jurisdiction both because it presents a central and substantial federal question and that improperly joined defendants should be ignored for the purpose of determining that there is complete diversity between the proper parties.

**PRELIMINARY STATEMENT**

Until recently, New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC" or "Defendant") operated a compounding pharmacy in Framingham, Massachusetts.

Recriminations in Congress prompted the FDA Commissioner to decry the "crazy quilt" of overlapping and contradictory regulations, and court decisions that leave regulators with unclear authority. Matthew Perrone, *FDA seeks more authority amid meningitis outbreak*, The Globe, Nov. 16, 2012 (www.boston.com/lifestyle/health/2012/11/16/fda-seeks-more-authority-amid-meningitis-outbreak/SOSALmOP9A90gIZKD2mKHK/story.html) (last visited Nov. 29, 2012).

There is little doubt that these matters raise issues of national importance. The issue is doubtlessly federal and substantial. The most central of questions to be answered is whether the activities at NECC exceeded whatever potentially limited exception compounding pharmacies have from federal oversight over traditional manufacturing activities. Indeed, after the Supreme Court invalidated portions of a federal law directly addressing the issue, the courts of two Circuits have split and come to opposing conclusions on the survival of critical remaining provisions and the nature of Congress's intent.

Whether these federal issues are "substantial," or significant enough to be heard in a unified national forum is beyond question. Defendant respectfully asserts that the substantial unresolved issues of federal law and regulatory authority should persuade this Court to invoke its § 1331 jurisdiction and make available, as urged by the Supreme Court, "the

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

Further, as explained below, this Court has clear diversity jurisdiction under § 1332, despite Plaintiff's improper joinder of co-defendants.  Co-defendant has, in fact, moved to dismiss for Plaintiff's improper commencement of a malpractice action, which was filed solely to defeat diversity jurisdiction.  Further, an improperly joined defendant's consent is not required to effect removal under diversity jurisdictional procedures.

## PROCEDURAL BACKGROUND

Plaintiff, who, upon information and belief, is and was at all relevant times, a Florida resident, commenced this action in the Circuit Court of the 5th Judicial Circuit in and for Marion County, Florida.  Plaintiff alleges damages resulting, generally, from treatment involving an epidural steroid injection administered in a Florida medical facility, Marion Pain Management Center, Inc. ("Marion").  Plaintiff alleges that the injection contained potentially contaminated methylprednisolone acetate compounded by NECC.  Since undergoing the procedure, Plaintiff has purportedly contracted meningitis and has allegedly suffered mental anguish, pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, aggravation of a previously existing condition, loss of ability to earn money, and medical expenses.  Plaintiff does not allege that she has actually been diagnosed with meningitis.

Plaintiff filed her Complaint on October 15, 2012 in the 5th Judicial Circuit in and for Marion County, Florida, naming only NECC as a defendant.  On November 14, 2012, NECC removed this action from the state court.  In the meantime, on November 13, 2012, Plaintiff

filed an Amended Complaint naming Marion, a Florida based medical facility, as a defendant.  NECC was not served with the Amended Complaint, however, until November 20, 2012, one week after it had filed its Notice of Removal.  Additionally, though Defendant checked the docket to ensure the complete state court file was included with the removal as required by the Local Rules, at that time the docket did not reflect the filing of an Amended Complaint.  As a result, at the time that NECC removed this action, it was unaware that another defendant had been added.

On December 7, 2012, Defendant Marion moved to dismiss Plaintiff's claims based on improper commencement of a malpractice action.  A copy of Defendant Marion's Motion to Dismiss Plaintiff's Amended Complaint is annexed to this Opposition as Exhibit "A." Clearly, Plaintiff cannot maintain this action in any court.

## ARGUMENT

**I.   THIS COURT PROPERLY EXERCISES SUBJECT MATTER JURISDICTION**

### A.  Diversity Jurisdiction Exists Under 28 U.S.C. § 1332

The substantive statutory requirements for this Court's subject matter jurisdiction are indisputable.  Complete diversity exists between Plaintiff and NECC.  That the other named defendant (Marion) is, upon information and belief, a Florida based company does not destroy diversity and prevent removal under these circumstances because it was fraudulently joined.

Joinder of a non-diverse defendant solely for the purpose of defeating diversity jurisdiction will not divest a federal district court of jurisdiction.  *See*, *e.g.*, *Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005) (rejecting amendment to complaint where plaintiffs

sought to name non-diverse defendants solely to defeat diversity and to deprive the court of jurisdiction); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (abrogated as to aggregation of punitive damages).

Here, Plaintiff's Amended Complaint alleges against Marion claims for strict liability, and negligence based upon its administration of allegedly contaminated methylprednisolone acetate preparation and its selection of NECC as a compounding pharmacy. (*See generally* Am. Compl. ¶¶ 15-19.)

Marion is improperly joined because there is no possibility that Plaintiff can establish a cause of action against Marion in state court based on the allegations as set forth in her Amended Complaint. A defendant is fraudulently joined where there is no "reasonable basis" for a claim against it. *See Legg*, 428 F.3d at 1325 n.5 ("The potential for legal liability 'must be reasonable, not merely theoretical.'") (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2005)); *see also In re Rezulin Prods. Liability Litig.*, 133 F. Supp. 2d 272, 280 n.4 (S.D.N.Y.2001) (stating that the no possibility language "cannot be taken literally" and that the standard is more accurately described as requiring that there is "no reasonable basis" for predicating liability on the claims alleged).

Here, Plaintiff's Amended Complaint asserts claims against Marion in negligence and strict liability. (*See generally* Am. Compl. ¶¶ 15-19.) With respect to her negligence claim, Plaintiff fails to support the very general and conclusory allegations against Marion with specific facts. Rather, Plaintiff merely claims that Marion breached a duty by "using methylprednisolone acetate compounded and manufactured by NECC, which was," supposedly, "cheaper and of inferior quality to steroids manufactured by leading drug

manufacturers" (*Id.* ¶ 17(a).)   Plaintiff also alleges that Marion breached its duty by

purchasing methylprednisolone acetate from a compounding facility. (*See id.* ¶ 17(b).)

Plaintiff further alleges, without basis, that NECC manufactured methylprednisolone acetate

in bulk, and without any required prescriptions, thereby making the preparation much more

likely to be dangerous to public consumers and to Plaintiff. (*Id.* ¶ 17(b).)   Knowing that,

Plaintiff asserts that Marion breached its duty by "failing to warn Plaintiff about the

significant risks of being injected in the spine with methylprednisolone acetate compounded

and manufactured by NECC" (*Id.* ¶ 17(c).)   These conclusory allegations are preposterous

and unsupported by any facts.

Plaintiff utterly fails, however, to assert that the information contained within this

allegation was known by, or even available to, Marion.  Accordingly, Plaintiff's conclusory

allegations cannot defeat Defendant's claim of fraudulent joinder here because the facts

alleged, even if accepted as true, do not establish a prima facie case of negligence. *See Legg*,

428 F.3d at 1324-25 (plaintiff's conclusory allegations that non-diverse defendant knew or

should have known of the risks associated with the drug manufactured by diverse defendant

were insufficient to state a claim and thus, non-diverse defendant found to be fraudulently

joined); *Fowler v. Wyeth*, No. 3:04-CV-83/MCR, 2004 WL 3704897, at *4 (N.D. Fla. May

14, 2004) (holding that non-diverse defendants were fraudulently joined where plaintiffs

failed to put forth specific evidence to support their allegations); *Sobkowski v. Wyeth*, No.

5:04-CV-96-OC-10GRJ, 2004 WL 3581799, at *1 (M.D. Fla. June 24, 2005) (finding non-

diverse defendants fraudulently joined because plaintiff's allegations that non-diverse

defendants knew or should have known of the harmful effects of a drug manufactured by

diverse defendant, without more, were insufficient to state a claim); *see also In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, No. 00 Civ. 2843 (LAK), 2003 WL 43356, at *1 (S.D.N.Y. Jan. 6, 2003) (finding fraudulent joinder where plaintiff failed to state a cause of action against non-diverse physician for negligence); *In re Baycol Prods. Litig.*, No. MDL 1431 (MJD), 02-4835, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (holding that conclusory allegations that physician was negligent absent supporting factual assertions will not defeat fraudulent joinder).

Plaintiff's position is not made any more convincing by her citation to inapposite cases. In her Motion for Remand, Plaintiff specifically points to four cases to support her argument that a defendant like Marion may be sued in negligence. Three of the cited decisions involve claims against pharmacies for failing to identify certain risks to the plaintiffs that were obvious on the face of the prescription, or that were specifically known by the pharmacy. *See Dee v. Wal-Mart Stores, Inc.*, 878 So. 2d 426, 427-28 (Fla. 1st DCA 2004) (finding pharmacy negligent because it filled a prescription without any time limit for use because the prescription was unreasonable on its face); *Powers v. Thobhani*, 903 So. 2d 275, 278-79 (Fla. 4th DCA 2005) (holding pharmacies liable for overprescribing narcotics); *Arrington v. Walgreen Co.*, 664 F. Supp. 2d 1230, 1233 (M.D. Fla. 2009) (finding that pharmacy may be held liable for negligence in filling a prescription with a drug to which pharmacy knew plaintiff was allergic). The fourth case Plaintiff cites is also inapplicable because there, the defendant did not challenge the negligence claim and thus, the sufficiency of the plaintiff's pleadings was not discussed. *See Fontanez v. Parenteral Therapy Assocs., Inc.*, 974 So. 2d 1101, 1102 (Fla. 5th DCA 2008). Here, Plaintiff's problem is not that

7

Florida law does not provide that a claim may be brought against a defendant like Marion; it is that Plaintiff's Amended Complaint fails to state a claim for negligence.

Plaintiff's strict liability claim against Marion similarly fails under the "reasonable possibility" standard.  Marion, as a health care provider, does not manufacture or sell products but rather, provides a professional service.  As such, it cannot be held liable under a theory of strict liability as a matter of law.  *See McLeod v. W.S. Merrell Co., Division of Richardson-Merrell, Inc.*, 174 So.2d 736, 739 (Fla. 1965) (refusing to extend the concept of strict liability to pharmacies); *Fontanez*, 974 So. 2d at 1102 (affirming trial court's decision granting summary judgment on plaintiff's strict liability claim, and finding that "such theories [do] not apply to a retail prescription pharmacist.").  Accordingly, because Plaintiff's strict liability claim has no basis in law, Marion's citizenship must be disregarded, and removal cannot be defeated.

The lack of merit is further underscored by Plaintiff's hasty and improper commencement of the malpractice action and has prompted Marion to move to dismiss the claims in their entirety.

Lastly, and contrary to Plaintiff's contention, Marion was fraudulently joined and therefore, its consent is not required for removal. *See White v. Bombardier Corp.*, 313 F. Supp. 2d 1295, 1299-1300 (N.D. Fla. 2004) ("A removing defendant need not obtain consent: (1) of a defendant who has not yet been served with process; (2) of a formal or nominal defendant; (3) *of a defendant who has been fraudulently joined . . . .*") (emphasis added); *see also United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002); *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).  Moreover, at the

time of the removal, on November 14, 2012[1], Plaintiff had not served Marion with the Amended Complaint – Marion was served on November 15, 2012. As noted by the *White* court, consent is not required "of a defendant who has not yet been served with process." 313 F. Supp. 2d at 1299-1300.

Thus, this Court has diversity jurisdiction over this matter, and Plaintiff's motion must be denied.

### B. Federal Question Jurisdiction is Proper Under 28 U.S.C. § 1331

28 U.S.C. § 1331 vests this Court with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The question of whether a claim or cause of action arises under federal law looks to the face of a well-pleaded complaint. *Franchise Tax Bd v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983). In adjudicating a state law cause of action, federal question jurisdiction is proper where "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state law claims." *Id.* at 13; *Grable*, 545 U.S. at 312-14.

Defendant acknowledges the Court's cautionary statement in *Grable* that "even when the state action discloses a contested and substantial federal question . . . . The federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts . . . ." *Grable*, 545 U.S. at 313. The determination must include an analysis of whether the state law claims raise "a stated federal issue, actually disputed and substantial, which a federal

---

[1]    Plaintiff, referring to the date and time that the notice of filing notice of removal was filed with the state court rather than the date the removal was filed with this court, mistakenly represents in the Motion for Remand that the removal was filed on November 15, 2012.

forum may entertain without disturbing any congressionally approved balance of federal and

state judicial responsibilities." *Id*. at 314.  Defendant submits that these requirements are met.

As alleged in the Amended Complaint, NECC was a compounding pharmacy.  (Am.

Compl. ¶¶ 4-5.)  Plaintiffs in other related actions have also alleged that NECC improperly

operated as a pharmaceutical manufacturer.  These apparently competing allegations turn on

the interpretation of conflicting federal and state laws and regulations concerning the types of

activities in which compounding pharmacists may engage.  This distinction is critical for the

determination of Plaintiff's state law claims.

The federal issue in the instant matter concerns the definition and boundaries of

pharmacy compounding versus "manufacturing" as it is defined in the federal Food, Drug &

Cosmetic Act ("FDCA").  Defendant does not contend that Plaintiff's claims themselves

stem from the purported violation of the FDCA, or of FDA regulations; to be sure, no claim

could exist for the purported violation of such regulations.  *See Buckman Co. v. Plaintiffs'*

*Legal Committee*, 531 U.S. 341, 350 (2001).  Rather, it is how federal law defines and

perceives NECC's activities, which is critical to the determination of Plaintiff's state law

claims.

For its part, FDA has publicly taken the position that compounding pharmacists are,

in fact, manufacturing "new drugs":

> FDA's position is that the Federal Food, Drug, and Cosmetic
> Act (FDCA) establishes agency jurisdiction over "new drugs,"
> including compounded drugs.   FDA's view that the
> compounded drugs are "new drugs" within the meaning of 21
> U.S.C. § 321(p), because they are not "generally recognized,
> among experts . . . as safe and effective," is supported by
> substantial judicial authority.

>                *        *        *
>    FDA maintains that, because they are "new drugs" under the
>    FDCA, compounded drugs may not be introduced into
>    interstate commerce without FDA approval.
>
>                *        *        *
>    FDA regards traditional compounding as the extemporaneous
>    combining, mixing, or altering of ingredients by a pharmacist
>    in response to a physician's prescription to create a medication
>    tailored to the specialized needs of an individual patient. *See*
>    *Thompson v. Western States Medical Center*, 535 U.S. 357,
>    360-61 (2002).  Traditional compounding typically is used to
>    prepare medications that are not available commercially, such
>    as a drug for a patient who is allergic to an ingredient in a
>    mass-produced product, or diluted dosages for children.

*Bellevue Pharmacy Solutions Warning Letter*.        November   14,   2008

(www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformation/PharmacyCompounding/u

cm155169.htm) (last visited Nov. 1, 2012).

FDA's position, however, has been in apparent conflict with provisions of federal and

state law potentially overseeing compounding pharmacies.  Various states have enacted

differing and in some cases conflicting regulations on the practice of pharmacies.  Federal

standards, if applicable, would preempt state duties where it is impossible for a private party

to comply with both state and federal requirements.  *Pliva, Inc. v. Mensing*, 564 U.S. ___,

131 S. Ct. 2567 (2011).  While NECC maintains that its compounding practices conformed

to all applicable standards for compounding pharmacies, a singular and clear interpretation of

the relevant federal authority is necessary to properly assess the applicability and interplay of

FDA's rules with state regulatory authority.

It makes no difference that only state law claims are asserted.  When establishing

federal question jurisdiction, it is irrelevant that Plaintiff may not have intended to plead a

federal cause of action.  In *Grable*, the Supreme Court held that federal question jurisdiction

exists when a state law cause of action raises a substantial federal question that is in dispute.

*Grable*, 545 U.S. at 316-20.  Plaintiffs may not avoid this result through artful pleading.  *See*

*Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998) ("If a court concludes that a plaintiff has

'artfully pleaded' claims" by omitting to plead federal questions, "it may uphold removal

even though no federal question appears on the face of the plaintiffs complaint."); *see also*

*Marcus v. AT&T Corp.*, 138 F.3d 46, 55-56 (2d Cir. 1998) (affirming district court's denial

of motion to remand and explaining "the artful-pleading doctrine . . . prevents a plaintiff from

avoiding removal by framing in terms of state law a complaint the real nature of which is

federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal

questions in a complaint") (internal quotation marks and citations omitted).

   In a very recent decision, a district court in New York applied *Grable* to its

acceptance of § 1331 jurisdiction over an action alleging state law failure to warn claims.

*Bowdrie v. Sun Pharmaceutical Industries, Ltd.*, No. 12-CV-853 (WFK)(MDG), 2012 WL

5465994 (E.D.N.Y.  Nov. 9, 2012).  In deciding that state law failure to warn claims

necessarily implicated federal issues, the Bowdrie court analyzed and applied *Grable*:

> **The federal question in this case is substantial**.  In *Merrell
> Dow* [*Pharmaceuticals Inc. v. Thomson*, 478 U.S. 804 (1986)],
> the issue presented to the Court was solely "whether
> incorporation of a federal standard in a state-law private action,
> when Congress has intended that there not be a federal private
> action for violations of that federal standard, makes the action
> one 'arising under the Constitution, laws or treaties of the
> United States.' "  478 U.S. at 805 (citing 28 U.S.C. § 1331).
> The Court found because Congress did not intend to create a
> private cause of action under the FDCA, importing a standard
> from that statute is not, by itself, sufficiently substantial to
> confer federal question jurisdiction. *Merrell Dow*, 478 U.S. at

813-14 (quoting *Franchise Tax Bd.*, 463 U.S. at 20-21). However, the Court did not foreclose the possibility that a state law cause of action utilizing a federal standard could raise a substantial issue of federal law. Rather, the Court recognized the need for "principled, pragmatic distinctions" and "careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction." 478 U.S. at 814 (citing *Franchise Tax Bd.*, 463 U.S. at 20-21); *see also W. 14th St. Commercial Corp.*, 815 F.2d at 96 ("[A]ssuming that plaintiffs have no private right of action under [the Co-op Abuse Relief Act], we conclude that the federal elements in plaintiffs' state cause of action would still be sufficiently substantial to confer arising under jurisdiction."); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Serv. Corp.*, 27 F.3d 911, 917 (3d Cir. 1994) ("The nature of the federal interest at stake is determinative of whether it is sufficiently substantial to displace state law."). In this case, the federal issue involved goes far beyond simply incorporating a federal standard into a state law cause of action. To the extent they invoke the "federal duty of sameness," Plaintiffs' causes of action implicate the labeling requirements for generic drug manufacturers nationwide. **The federal question present in this case involves a responsibility that is in the first instance, and primarily, federal: regulation of the manufacture, marketing, and distribution of drugs**.

The federal question at issue here is a sufficiently substantial and necessary element of Plaintiffs' state-law claims to confer original jurisdiction upon this Court pursuant to 28 U.S.C. § 1331.

*Bowdrie*, 2012 WL 5465994, at \*4 (emphasis supplied).

Federal law is clearly implicated by Plaintiff's claims. FDA alone cannot interpret its own authority. The legitimate claims of the genuinely injured can only be addressed once the issue has been resolved in a federal court, in a unified and authoritative manner.

Finally, the determination of this issue on a federal level could not possibly upset any balance of state and federal authority intended by Congress. Congressional intent of federal jurisdiction over the limits of compounding activities is manifest in the passage of § 503A.

13

Congress clearly intends for FDA to exercise a leading role in regulating compounding activities. The adoption of § 503A itself is the clearest possible expression of Congress that federal jurisdiction should predominate.

In sum, this Court has the discretion and authority to exercise § 1331 jurisdiction. The importance of the matter demands it.

## II.   IT IS NECESSARY AND APPROPRIATE FOR THIS COURT TO DEFER RULING ON REMAND PENDING ACTION BY THE JPML

There are a substantial number of federal cases already pending, which arise from the core allegations in this case. There is also a strong likelihood that there will be significant additional filings. This volume of cases leads to a near certainty that the Judicial Panel on Multidistrict Litigation ("JPML") will certify this litigation for MDL treatment – particularly since no party has opposed such designation. Regardless of which court is chosen to lead the MDL, one of the hardest tasks of that court will be to coordinate whatever litigation exists.

Deciding remand at this early stage is likely to impact other matters, tying the hands of the JPML and any future transferee court, and threatening the federal court system's ability to meaningfully manage and coordinate this litigation of national scope. The transferee MDL court should be afforded the opportunity able to manage preliminary proceedings jointly and, if appropriate, order remand in an organized and orderly fashion. To do otherwise would not only seriously burden defendants, but could also obviate the intent of Congress in coordinating mass litigation and further burdening state and federal courts around the country.

As contemplated by numerous district courts in the past, deferral of a remand decision is necessary and appropriate in the context of multidistrict litigation. The Federal Judicial

Center's Manual for Complex Litigation, the comprehensive and authoritative guide for effectively managing large numbers of related actions filed in multiple jurisdictions, advises that a stay pending action by the JPML "can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well." MANUAL FOR COMPLEX LITIGATION § 22.35 (4th ed. 2004). However, even when the Court has declined to issue a formal or blanket stay, certain issues may best be left for resolution by the eventual transferee court.

According to the Manual, reasons for delay "diminish" if pending motions "raise issues relating to the law of a single state that are unlikely to arise in other related cases, if MDL transfer appears unlikely, or if the absence of federal jurisdiction is clear." *Id.* None of these scenarios apply in the instant matter. Numerous motions relating to state law have already been heard, considered and ruled upon. These issues are unlikely to be re-litigated before a future transferee court (although they would be likely to arise again if actions were hastily remanded to state court). Given that all related state court actions were removed by NECC on virtually identical grounds, such motions necessarily raise issues that are common to all of the federal court actions.

While the JPML has not yet formally heard or signaled a ruling on the applications before it, criteria for transferring these actions to an MDL is clearly met and nearly universally supported by the litigants. Similarly clear is the JPML's desire to carefully consider the circumstances and implications of the application before it. When asked to expedite its ruling in November, the JPML declined the invitation, stating that it "considers

15

all applications in due course." Minute Order, IN RE: New England Compounding Pharmacy, Inc., Products Liability Litigation, MDL No. 2419 (J.P.M.L. Nov. 9, 2012), ECF No. 34. There is little reason to believe that the JPML will refuse to centralize these matters or that these related cases warrant expediting decisions on any of the common issues.

Similarly, there exists no "clear" absence of federal jurisdiction. Numerous actions have been filed directly into this and other federal district courts and federal subject matter jurisdiction in these actions will remain unchallenged. As extensively discussed above, the important and substantial federal issues raised by the facts of these cases are apparent to jurists, litigants and legislators alike. Thus, it cannot be said that there is a clear absence of federal jurisdiction.

Many district courts faced with similar decisions have found it appropriate to defer ruling on remand. For example, in *Turner v. Bausch & Lomb Inc.*, No. 8:06-cv-1088-T-24MSS, 2006 U.S. Dist. LEXIS 48546 (M.D. Fla. July 17, 2006), the United States District Court for the Middle District of Florida was confronted with a similar situation and found deference to the impending MDL court appropriate. There, certain plaintiffs had filed a Motion for Coordinated or Consolidated Pretrial Proceedings, seeking the establishment of an MDL proceeding. *Id.* at *2. In the meantime, the *Turner* plaintiff filed a motion for remand its case. *Id.* at *3. The court found that it should refrain from addressing the motion to allow for the designation of an MDL court. Once transferred, the MDL panel would then be the appropriate court to review the pending motion for remand in the interests of consistency and judicial economy. *Id.* (recognizing that the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has

transferred the case to the MDL panel.") (citing *Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at \*6 (W.D. Tenn. Apr. 3, 2001); *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990); *Moore v. Wyeth-Ayerst Labs.*, 236 F. Supp. 2d 509, 512 (D. Md. 2002); *Falgoust v. Microsoft Corp.*, No. CIV.A.00-0779, 2000 WL 462919, at \*2-3 (E.D. La. April 19, 2000)). Moreover, courts have repeatedly found deferral to an MDL court appropriate to promote judicial economy and avoid the risk of inconsistent judgment where cases presented common legal issues. *See, e.g.*, *Tobler v. Depug Orthopaedics, Inc.*, No. 2:12-cv-01167-LDG(RJJ), 2012 WL 3598291, at \*2 (D. Nev. Aug. 17, 2012); *Yearwood v. Johnson & Johnson, Inc.*, No. RDB-12-1374, 2012 WL 2520865, at \*4 (D. Md. June 27, 2012). Most significantly, ruling on remand prior to consolidation could lead to inconsistent decisions and undermine the principles of uniformity, consistency, predictability, and judicial efficiency that underlie the MDL system.

Finally, Plaintiff does not, and cannot claim prejudice from a relatively short deferral of such a ruling given that the MDL will convene and rule in the immediate future.

Given these circumstances, this Court should defer ruling on Plaintiff's Motion to Remand to the soon-to-be-appointed MDL court.

## CONCLUSION

The JPML will soon consider the application to centralize and transfer all matters arising from these circumstances to a single District Court. Defendant anticipates that the application will be granted and that this matter will be transferred to an MDL for further pretrial proceedings. Acting in a coordinated manner, an MDL court may properly identify or reject its subject matter jurisdiction over such federal issues, clearly and consistently, and

without unnecessarily taxing the resources of the many district courts or risking problematic

inconsistent decisions.  Improper joinder of Marion in this case should not thwart that effort.

       WHEREFORE, for the foregoing reasons, Defendant requests that the Court deny the

Plaintiff's Motion for Remand and grant Defendant any such other and further relief as this

Court deems just and equitable.

Dated:  December 17, 2012.                Respectfully submitted,


                                  s/Melissa D. Krepps
                                  Charles D. Bavol
                                  Bar Number 776701
                                  Melissa D. Krepps
                                  Bar Number 595551
                                  Attorneys for Defendant
                                  New England Compounding
                                  Pharmacy, Inc. d/b/a
                                  New England Compounding Center
                                  The Bleakley Bavol Law Firm
                                  15170 N. Florida Avenue
                                  Tampa, Florida 33613
                                  Telephone:  813.221.3759
                                  Facsimile:  813.221.3198
                                  cbavol@bleakleybavol.com
                                  mkrepps@bleakleybavol.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on **December 17, 2012,** I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Melissa D. Krepps
Attorney

## SERVICE LIST

John H. Piccin
Piccin Law Firm
Post Office Box 159
320 NW Third Avenue
Ocala, FL  34478-0159
Attorneys for Plaintiff

Served via CM/ECF.

Ervin A. Gonzalez
Patrick S. Montoya
Colson  Hicks  Eidson  Colson  Matthews
Martinez Gonzalez Kalbac & Kane
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Attorneys for Plaintiff

Served via CM/ECF.

Daniel A. Shapiro
Rhonda Beesing
COLE, SCOTT & KISSANE, P.A.
4301 West Boy Scout Boulevard, Suite 400
Tampa, FL 33607
Attorneys for Defendant Marion Pain
Management Center, Inc.

Served via U.S. Mail.