IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL
CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

VILINDA YORK,

CASE NO.: 2012-4133-CA-G

vs.

NEW ENGLAND COMPOUNDING PHARMACY, INC.
A Foreign Corporation, d/b/a/ NEW ENGLAND
COMPOUNDING CENTER

Defendants.
_____/

## MOTION TO DISMISS AMENDED COMPLAINT

COMES NOW, Defendant, MARION PAIN MANAGEMENT CENTER, INC (hereinafter referred to as "DEFENDANT"), a Florida corporation authorized to do business in the State of Florida, and hereby serves this Motion to Dismiss the Amended Complaint filed by Vlinda York and in support thereof, respectfully submits the following:

## INTRODUCTION AND FACTUAL BACKGROUND

1. On or about November 15, 2012, Ms. York filed a four-count Amended Complaint against NEW ENGLAND COMPOUNDING PHARMACY, INC. a foreign corporation d/b/a/ NEW ENGLAND COMPOUNDING CENTER (hereinafter collectively referred to as "NECC") and DEFENDANT which includes the following claims:

- **Count I**- NECC- Negligence.
- **Count II** -NECC- Strict Liability.
- **Count III** –DEFENDANT-Negligence.
- **Count IV**- DEFENDANT-Strict Liability. (A copy of Ms. York's Amended Complaint is attached hereto as "**Exhibit A**")

2. Allegations made against DEFENDANT arise from claim the "medical director employee and owner of Marion Pain Management performed epidural spinal injections of methylprednisolone acetate compounded and manufactured and distributed by NECC, in Plaintiff on August 15, 2012 and August 28, 2012."

3. Plaintiff's Complaint must be dismissed because this case arises from medical care being provided to Plaintiff, and Plaintiff failed to comply with the Florida Malpractice Act and its pre-suit requirements.

## SUMMARY OF ARGUMENTS

4. Ms. York has attempted to disguise this claim as one arising under ordinary negligence and products liability. However, it is clear from the face of Ms. York's complaint that this is a claim arising out of the rendering of medical care or services. The Amended Complaint alleges that DEFENDANT had a duty to utilize a steroid which is sterile and safe for its patients and to warn of the significant risks of being injected in the spine with methylprednisolone acetate was directly related to medical services provided to Ms. York by DEFENDANT. Furthermore, the medical services rendered by DEFENDANT could not have been rendered without utilizing the product in question, and the relationship between Ms. York and DEFENDANT was for the provision of medical services based upon DEFENANT's medical judgment, skill or expertise, so that the medical malpractice statute applies, and Ms. York's strict liability claim is inapplicable under Florida law. For the foregoing reasons, Ms. York's Amended Complaint should be dismissed.

Case No. 12-4133-CA-G

## MEMORANDUM OF LAW

### A. MS. YORK'S SUIT ARISES UNDER A THEORY OF MEDICAL MALPRACTICE DESPITE THE CLEAR ATTEMPT TO DISGUISE THE CLAIM AS GENERAL NEGLIGENCE AND STRICT LIABILITY.

Section 766.106(1)(a), Florida Statutes defines a claim for medical negligence or medical malpractice as "a claim arising out of the rendering of, or the failure to render, medical care or services." To be a malpractice claim, a wrongful act must be directly related to the improper application of medical services and the use of professional judgment or skill. *Lynn v. Mount Sinai Med. Ctr., Inc.*, 692 So.2d 1002, 1003 (Fla. 3d DCA 1997). The injury must be a direct result of receiving medical care or treatment by the healthcare provider. *Goldman v. Halifax Med. Ctr., Inc.*, 662 So.2d 367, 371 (Fla. 5th DCA 1995).

Section 766.102(1), Florida Statutes states: "In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in section 766.202(4), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers."

"Medical negligence" is defined as "medical malpractice, whether grounded in tort or in contract." *Fla. Sta. § 766.202(7)*. "The question in determining if a claim is a

medical malpractice claim is whether the Plaintiff must rely upon the medical negligence standard of care, as set forth in § 766.102(1)..." *Tenet S. Fla. Health Sys. v. Jackson*, 991 So.2d 396,399 (Fla. 2d DCA 2008). A Plaintiff is generally entitled to plead his claims as he wishes, thereby assuming the burden of proving that the acts of the defendant constitute acts of ordinary negligence or other torts unrelated to or independent of any act of medical malpractice. *Stackhouse v. Emerson*, 611 So.2d 1365 (Fla. 5th DCA 1993). However, the courts recognize the possibility that a claimant may attempt to disguise a medical malpractice claim as a claim based on ordinary negligence in the hopes that he might be able to submit the case to a jury without expert testimony and meet the burden of establishing a breach of the ordinary negligence standard of care. *NME Properties, Inc. v. McCullough*, 590 So. 2d 439 (Fla. 2d DCA 1991).

Courts have applied the Medical Malpractice Act in circumstances where there was an alleged failure to properly maintain a medical device. In *Corbo v. Garcia*, 949 So.2d 366 (Fla. 2nd DCA 2007), a patient who received burns to her arms when she was connected to a physical therapy machine that provided electrical stimulation brought a negligence action against the physical therapist and his practice alleging failure to properly maintain the machine. *Id.* at 368. The DCA held the claim arose out of the rendering of medical treatment; thus, the lawsuit was subject to the presuit screening requirements. *Id.* at 370. The injury alleged by Garcia was directly inflicted by the medical care – that is, physical therapy treatment provided by the care provider arising from the rendering of medical care or services. The basis for Garcia's claim was the negligent administration of a treatment modality. *Corbo* 949 So.2d. at 370. Therefore,

her injury occurred during medical treatment, and in order to prove her claim, she must prove that the petitioners did not properly maintain their electrical stimulation equipment, which falls within the standard of care involved in treating a patient with that equipment. *Id.*

In *Goldman,* the Plaintiff alleged the operator of mammographic equipment "negligently applied excessive pressure and caused one of [the Plaintiff's] silicone breast implants to rupture". *Goldman,* 662 So.2d at 368. The Plaintiff also alleged her injury was caused, in part, by the equipment not having been properly calibrated. *Id.* The court considered whether the failure to calibrate properly the mammography equipment constituted medical malpractice. In holding this is a claim which would clearly fall within the realm of providing medical care, the court likened the failure to properly calibrate mammography equipment to an injury caused by a doctor's use of an unclean scalpel. *Id.* at 370.

In the present case, as in *Corbo* and *Goldman,* the injury alleged by Ms. York was directly inflicted by the medical care - that is the epidural steroid injection of methylprednisolone acetate which was performed at Marion Pain Management; thus, it arose out of the rendering of medical care or services. Ms. York alleges DEFENDANT negligently administered a treatment modality. Moreover, Ms. York's injury occurred during medical treatment. In order to prove her claim, she must prove DEFENDANT did not properly utilize a steroid which was sterile and safe for its patients, and failed to warn about the significant risks of being injured in the spine with methylprednisolone acetate purchased from NECC. This claim clearly arises out of the rendering of, or the failure to render, medical care or services. As such the claim clearly falls under the

purview of *Fla .Stat.* §766.106(1)(a) which clearly defines medical negligence or medical malpractice. Further, Ms. York has clearly asserted the purported wrongful act was directly related to the improper application of medical services and the use of professional judgment or skill. Thus, Ms. York's action does not claim ordinary negligence on the part of DEFENDANT. Ms. York's action asserts a claim of medical negligence or medical malpractice and under Florida law cannot be disguised as a general negligence or strict liability claim.

### B. DISMISSAL IS WARRANTED FOR FAILURE TO COMPLY WITH MEDICAL MALPRACTICE STATUTORY PRE-SUIT REQUIREMENTS

A Plaintiff must comply with the Florida Malpractice Act in order to maintain an action against a healthcare provider. *Weinstock v. Groth*, 629 So.2d 835 (Fla. 1993). A healthcare provider is defined by Florida Statute 766.202(4), to include any hospital, ambulatory surgical center, or [...] any person licensed under chapter 458 [...]. The Medical Malpractice Act incorporates a pre-suit investigation procedure under which the claimant and defendants must comply before a medical malpractice suit may be filed in court. *See Fla. Stat. § 766.106.* In order to determine whether the pre-suit requirement of chapter 766 applies, the question is whether the plaintiff must rely upon the medical negligence standard of care, as set forth in section 766.102(1), Florida Statutes (2005), in order to succeed in the plaintiff's case. *Integrated Health Care Servs., Inc. v. Lang-Redway*, 840 So.2d 974, 980 (Fla.2002). A negligence claim is subject to the medical malpractice presuit screening requirements if the wrongful act is *directly related to the improper application of medical services and use of professional judgment or skill. Id.* at 369 *citing Lynn v. Mount Sinai Med. Ctr., Inc.*, 692 So.2d 1002, 1003 (Fla. 3rd DCA 1997).

A critical component of the Act requires the claimant to "notify each prospective defendant...of intent to initiate litigation for medical negligence." *Fla. Stat.* § 766.106(2); *Moss v. Stadlan, M.D.*, 789 So.2d 1069 (Fla. 4th DCA 2001); *Goldfarb v. Urcuoli*, 858 So.2d 397 (Fla. 1st DCA 2003). Prospective defendants that are entitled to pre-suit notice under the foregoing section are "health care providers" listed in *Fla. Stat.* § 766.102(1), which include pain management clinics as defined in *Florida Stat.* § 458.2265.

Florida Statute § 766.106(2)(a) states "[n]otice to each prospective defendant must include, if available, a list of all known health care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period prior to the alleged act of negligence who treated or evaluated the claimant, and copies of all of the medical records relied upon by the expert in signing the affidavit."

Additionally, Florida law <u>requires</u> claimants to conduct an investigation prior to initiating a lawsuit or filing a notice of intent. *See* Fla. Stat. § 766.203(2). "Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert...at the time the notice of intent to initiate litigation is mailed." *Id.* The purpose of requiring a medical malpractice claimant to provide a corroborating medical opinion is to assure the legitimacy of the claim and to prevent the filing of baseless claims. *Yocom v. Wuesthoff Health Systems, Inc.*, 880 So.2d 787 (Fla. 5th DCA 2004). <u>Failure to provide the required medical expert opinion at the time of sending a notice of intent is grounds for dismissal.</u> *Id.* (emphasis added); *see also Godbold v. Cox-Novoa,*

730 So.2d 767 (Fla. 5th DCA 1999) (appellate court held the trial court should have dismissed Plaintiff's claims for failure to provide a supporting expert affidavit with the notice of intent); and *Cohen v. West Boca Medical Center, Inc.*, 854 So.2d 276 (Fla. 4th DCA 2003) (trial court appropriately dismissed Plaintiff's claim for failing to comply with presuit requirements pertaining to an unqualified supporting affidavit).

In *Yocom*, the Plaintiff sent defendant Wuesthoff a Notice of Intent but failed to include a supporting affidavit. See *Yocum*, 880 So.2d at 788. The appellate court affirmed the dismissal of Yocum's complaint. *Id.* In *Otto v. Rodriguez*, 710 So.2d 1 (Fla. 4th DCA 1998), the Plaintiff filed a lawsuit without providing the appropriate notice of intent and corroborating affidavit because Plaintiff did not receive a complete set of medical records from the defendant healthcare provider. See *Otto v. Rodriguez*, 710 So.2d at 2. The court found that the failure to provide the medical records waived the Plaintiff's requirement to provide a corroborating affidavit; however, not a waiver of the notice of intent. *Id.*

In the case at bar, and as previously referenced herein, Ms. York's claim clearly arises under a theory of medical malpractice because it occurred at a Pain Management Clinic, Marion Pain Management Center, with a patient who underwent a medical procedure involving an epidural injection given by DEFENDANT of a medical steroid which allegedly was unsterile, contaminated, and unreasonably dangerous. The Medical Malpractice Act requires Ms. York to comply with the pre-suit investigation procedure before a medical malpractice suit may be filed in court. See *Fla. Stat. § 766.106*. Ms. York's' failure to file a Notice of Intent to Initiate Litigation against DEFENDANT along with a corresponding expert Affidavit is fatal to their claim.

## C. STRICT LIABILITY DOES NOT APPLY TO MARION PAIN MANAGEMENT'S INJECTION OF METHYPREDNISOLONE ACETATE TO MS. YORK

The fundamental purpose of the doctrine of strict product's liability is to "further public safety in the use of consumer goods, by imposing liability without fault upon entities that have the ability to adequately compensate the injured party, distribute the risk of loss, and deter further production of defective products." *Porter v. Rosenberg*, 650 So.2d 79, 81 (Fla. 4th DCA 1995). In *Porter*, the Court opined that a physician exercises his or her "professional judgment" in determining what specific medical procedure to perform and then selecting the appropriate product to use in connection with the specific procedure. *Id.* The choice of a specific product is innately related to the professional services and skills that are offered by the medical care provider that is providing them. *Id.* When a physician is engaged in providing services which involve, among other things, the exercise of medical judgment, subsequent causes of action that are derived from personal injuries or death in connection with the rendering of medical services are governed by Chapter 766 of the Florida Statutes. Accordingly since the Medical Malpractice Act sets forth the manner for bringing a cause of action, an injured person who claims that a physician was acting in the role of a distributor of a product whereupon the distribution of that product was incidental to the delivery of medical services, the injured person would be "impermissibly circumventing" the requirements that are defined by the Medical Malpractice Act. *Id.*

Even though the language of the Medical Malpractice Act refers to actions for damages that are the result of negligence, Florida courts have rejected the application of strict liability involving health care providers that are involved in the distribution of the product in question. *See NME Hosps., Inc. v. Azzariti*, 573 So.2d 173 (Fla. 2d DCA

Case 5:12-cv-00630-ACC-PRL   Document 17   Filed 12/19/12   Page 10 of 16 PageID 303
Case No. 12-4133-CA-G

1991). The *NME Hosps.* Court held specifically, "A hospital that utilizes an alleged defective product only in the course of its primary function of providing medical services is not subject to an action in strict liability where the professional services could not have been rendered without using the product." *Id.*

Courts have shown reluctance to extend the principles of strict liability to health care providers who utilize the product incidental to its primary function. *Id.* In many cases a health care provider is more analogous to the consumer, or product user. A physician is not in the business of selling products, but rather they are providing medical services, and products, are utilized as needed to deliver the professional medical services. *Cafazzo v. Central Medical Health Servs.*, Inc. 430 Pa.Super 480, 635 A.2d 151, 54 (1993). The Court in *Porter*, following precedent from *NME Hosps.*, summarized the availability for a Plaintiff to utilize a strict liability action against a physician, hospital, or other health care provide is dependent upon the essence of the physician-patient relationship for the particular transaction. *Porter*, 650 So.2d at 83. More specifically, strict liability is inapplicable in instances where the medical services could not have been rendered without utilizing the product. And if the predominant purpose of the physician-patient relationship for the transaction is the provision of medical services which are based in the physicians' medical judgment, skill, or expertise, strict liability is inapplicable, and the Medical Malpractice Act applies. *Id.*

In the instant case, Ms. York sought the services of DEFENDANT to alleviate her back pain. The specific epidural injections utilized by DEFENDANT where specifically chosen following DEFENDANT'S exercising specific medical judgment, expertise and skill. The medical service of rendering an epidural injection to treat pain could not have

- 10 -
COLE, SCOTT & KISSANE, P.A.

been given without utilizing an injection that DEFENDANT ultimately used. Additionally, Ms. York sought treatment for her back pain at DEFENDANT'S clinic due to DEFENDANT'S level of skill, expertise, and experience in treating similar injuries. The primary purpose of the relationship between Ms. York and DEFENDANT was for DEFENDANT to provide medical services to Ms. York based on his level of skill, expertise, and experience. Therefore Ms. York's strict liability claim must fail, and is subject to the requirement of the Medical Malpractice Act in the state of Florida.

WHEREFORE, MARION PAIN MANAGEMENT CENTER, INC., INC. respectfully requests this Honorable Court to grant the relief sought herein and dismiss the Amended Complaint. It is further requested that the Court grant any further relief that it deems just and appropriate under the circumstances.

Case No. 12-4133-CA-G

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic mail (email) on 4 of December, 2012 at designated email address jp@piccinlawfirm.com to: **John H. Piccin**, Piccin Law Firm, P.O. Box 159, Ocala, FL. 34478-0159, Counsel for Ms. York.

By: _____
DANIEL A. SHAPIRO
FBN: 965960
RHONDA BEESING
FBN: 699721
COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant,
Marion Pain Management Center, Inc.
4301 West Boy Scout Boulevard,
Suite 400
Tampa, FL 33607
Telephone: (813) 864-9382
Facsimile: (813) 286-2900
Primary: Rhonda.beesing@csklegal.com
Secondary: Bethany.goodrow@csklegal.com

I:\1051-0102-00\p\mtd- med mal & spl.docx

IN THE CIRCUIT OF THE FIFTH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

CASE NO.: 12-4133-CA-G

VILINDA YORK,

    Plaintiff

vs.

NEW ENGLAND COMPOUNDING PHARMACY, INC., a foreign corporation, d/b/a NEW ENGLAND COMPOUNDING CENTER (NECC),

    Defendant

## AMENDED COMPLAINT

Plaintiff VILINDA YORK, by counsel, sues Defendants NEW ENGLAND COMPOUNDING PHARMACY, INC., d/b/a NEW ENGLAND COMPOUNDING CENTER (NECC), and MARION PAIN MANAGEMENT CENTER, INC., and says:

1. This is an action for damages that exceed Fifteen Thousand Dollars ($15,000.00).

2. At all material times, NEW ENGLAND COMPOUNDING PHARMACY, INC., d/b/a NEW ENGLAND COMPOUNDING CENTER (hereinafter "NECC") was and is a foreign corporation authorized to do and doing business in Marion County, Florida.

3. At all material times, MARION PAIN MANAGEMENT CENTER, INC. (hereinafter "Marion Pain Management") was and is a Florida corporation authorized to do and doing business in Marion County, Florida.

4. At all material times, NECC compounded and manufactured drugs in Framingham, Massachusetts for distribution and sale nationwide.



5. NECC compounded, manufactured and sold the drug methyprednisolone acetate, a steroid used to treat back pain, to Marion Pain Management in Marion County, Florida before and in August 2012. Said drug was sold to Marion Pain Management for injection by Marion Pain Management in its patients for spine pain treatment.

6. Plaintiff had spine pain as a result of a motor vehicle collision which occurred on January 1, 2012. Plaintiff was referred to Marion Pain Management by her treating internal medicine physician for spine pain treatment.

7. The medical doctor employee and owner of Marion Pain Management performed epidural spinal injections of methyprednisolone acetate, compounded and manufactured and distributed by NECC, in Plaintiff on August 15, 2012 and August 28, 2012.

8. Plaintiff became ill thereafter and was admitted to Munroe Regional Medical Center in Marion County, Florida on September 27, 2012, and remains an inpatient in that facility.

### COUNT I (Negligence Of NECC)

9. Plaintiff incorporates paragraphs 1 through 8 above.

10. NECC had a duty to compound and distribute methyprednisolone acetate in a reasonably careful manner and to warn about the significant risks of being injected in the spine with it.

11. NECC violated those duties by:

   (a) not operating in accordance with Massachusetts licensing regulation which requires that a compounding facility such as NECC have a prescription for each drug it compounds and distributes. Despite such regulation, NECC compounded and manufactured methyprednisolone acetate in bulk — in this case, more than 17,000 doses — without the required prescriptions, and

## COUNT II (Strict Liability Of NECC)

13. Plaintiff incorporates paragraphs 1 through 12 above.

14. The methyprednisolone acetate which NECC placed in the stream of commerce and which was injected into Plaintiff's spine was not sterile, was contaminated and was unreasonably dangerous to the public and to Plaintiff.

WHEREFORE, Plaintiff seeks judgment against NECC for damages, including interest as allowed by law, and trial by jury.

## COUNT III (Negligence Of Marion Pain Management)

15. Plaintiff incorporates paragraphs 1 through 8 and 12 above.

16. MARION PAIN MANAGEMENT had a duty to utilize only a steroid which was sterile and safe for its patients and to warn about the significant risks of being injected in the spine with the methyprednisolone acetate it purchased from NECC.

17. MARION PAIN MANAGEMENT breached those duties by:

    (a) using methyprednisolone acetate compounded and manufactured by NECC which was cheaper and of inferior quality to steroids manufactured by leading drug manufacturers such as Kenalog manufactured by Bristol Myers Squibb, and was in fact contaminated and not sterile, and dangerous to public consumers and to Plaintiff.

    (b) purchasing methyprednisolone acetate from NECC, knowing (1) that NECC was a compounding facility which is not subject to Federal Drug Administration regulation, knowing (2) that NECC, as a compounding facility, was required to have a prescription for each drug it compounds and distributes, but that NECC manufactured methyprednisolone acetate in bulk

and without the required prescriptions and sold it to Marion Pain Management and (3) knowing that the product therefore is much more likely to be dangerous to public consumers and to Plaintiff.

(c) failing to warn Plaintiff about the significant risks of being injected in the spine with methyprednisolone acetate compounded and manufactured by NECC.

WHEREFORE, Plaintiff seeks judgment against MARION PAIN MANAGEMENT for damages, including interest as allowed by law, and trial by jury.

### COUNT IV (Strict Liability of Marion Pain Management)

18. Plaintiff incorporates paragraphs 1 through 8 and 12 and 16 and 17 above.

19. The methyprednisolone acetate which Marion Pain Management purchased from NECC and was injected into Plaintiff's spine was not sterile, was contaminated and was unreasonably dangerous to the public and to Plaintiff

WHEREFORE, Plaintiff seeks judgment against MARION PAIN MANAGEMENT for damages, including interest as allowed by law, and trial by jury.

Dated this 13th day of November, 2012.

PICCIN LAW FIRM
Post Office Box 159
Ocala, FL 34478-0159
(352)351-5446
FAX (352)351-8057
jp@piccinlawfirm.com
Attorney for Plaintiff

By _____
John H. Piccin
Florida Bar No. 0194033